No. 3--97--0136

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 1998

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of the 9th Judicial Circuit,

 ) Knox County, Illinois

Petitioner-Appellee, ) 

 )

v. ) No. 96--CF--51

 ) 

LELAND COLE,                    ) Honorable

                                ) Harry Bulkeley

Respondent-Appellant. ) Judge, Presiding

_________________________________________________________________

JUSTICE HOLDRIDGE DELIVERED THE OPINION OF THE COURT:

_________________________________________________________________

Following a bench trial, the trial court found respondent, Leland L. Cole, to be a "sexually dangerous person," as that term is defined in section 1.01 of the Sexually Dangerous Persons Act (725 ILCS 205/0.01 
et
 
seq
. (West 1996) (the Act)).  725 ILCS 205/1.01 (West 1996).  On appeal, respon­dent con­tends:  (1) that a clinical diagnosis of pedo­philia cannot satisfy both the "mental disorder" component of the definition of "sexual­ly danger­ous person" and the other elements of the defini­tion; and (2) that the State failed to prove beyond a reasonable doubt that respondent is a "sexu­al­ly danger­ous person."  For the reasons that follow, we affirm.

Initially, we note that this court granted the Office of the State Appellate Defender (OSAD) leave to withdraw as counsel for respon­dent.  OSAD made its motion on the premise that section 10 of the State Appellate Defender Act (725 ILCS 105/10 (West 1996)) does not permit OSAD to represent clients in civil mat­ters, such as those under review here (725 ILCS 205/3.01 (West 1996)).  The State then filed a motion asking our supreme court to issue a supervi­sory order directing this court to vacate its earlier order and enter an order denying OSAD's motion for leave to withdraw.  The supreme court denied the State's motion.

In its brief, the State asks this court to reconsider the deci­sion to allow OSAD to withdraw in light of the supreme court's recent resolution of a similar controversy in the Second Judi­cial District.  In that case, the Second District Appellate Court denied OSAD's motion for leave to withdraw as counsel for a respondent who was appealing his commitment as a "sexually danger­ous per­son."  OSAD then asked the supreme court for a supervisory order directing the appellate court to vacate its earlier order and enter an order allowing OSAD's motion for leave to withdraw.  The supreme court denied OSAD's motion.

We must agree with the State that the supreme court has not exercised its supervisory power consistently in addressing this issue.  However, in view of the late stage of this appeal and the circuit court's appointment of competent appellate counsel to represent respondent, the interest in judicial economy weighs heavily in favor of reaching the merits of respondent's appeal without further delay.  Accordingly, the State's motion to reconsider is denied.

We now turn to a review of the proceedings in the trial court.  At trial, T.L., a 10-year-old boy, testi­fied that he stayed overnight at his grandfather's home on several occa­sions during July and August 1995.  When he visited his grandfa­ther, T.L. would sleep on the living room floor.  Respon­dent would sleep on a couch in the living room.  On four or five occasions, respon­dent undid T.L.'s pants and sucked on his penis.  During these events, no one else was present except for T.L.'s grand­fa­

ther who was asleep in the next room.

Milo L., T.L.'s father, testified T.L. spent several eve­

nings at his grandfather's home during July and August 1995.  At some point, however, T.L. refused to stay there.  During the autumn of 1995, T.L. began to protest that he did not want to go to school.  Once at school, T.L. would cry and ask to go home.  The school's principal allowed T.L. to call home every morning.  On some occasions, T.L. had to be picked up and taken home.  Milo asked T.L. what was wrong.  T.L. told his father that he could not tell him what was wrong.  In February 1996, Milo asked T.L. whether anyone had ever touched him "where they're not supposed to."  T.L. answered that someone had and identified respondent as the person who had done so.

On the State's motion, the trial court took judicial notice of respondent's prior sex offense convictions.  In 1990, respon­

dent pleaded guilty to aggravated criminal sexual abuse for fon­

dling the penis of a boy under the age of 13 and was sen­tenced to a five-year prison term.  In 1985, respon­dent was con­vict­ed of aggra­vat­ed criminal sexual abuse for fondling the penis of a boy under the age of 13 and placed on probation.  In 1981, respon­dent was con­vict­ed of contributing to the sexual delin­quency of a minor for fondling a boy under the age of 14 and sen­tenced to a one-year prison term.  In 1974, respondent was convicted of con­

tributing to the delin­quen­cy of a minor for fondling a boy under the age of 14 and placed on probation.

Dr. Robert E. Chapman, a court-appointed psychiatrist, testified on behalf of the State.  In an interview with Chapman, respon­dent denied any sexual activity with children.  Howev­er, in view of respondent's long history of molesting prepubescent males, Chapman con­clud­ed that respon­dent is a "sexu­al­ly danger­ous person."  Specif­ical­ly, Chapman found that respon­dent suffers from pedo­philia and anti-social person­al­ity disorder and that respondent had suffered from these mental disor­ders for more than one year prior to the filing of the State's petition.

Chapman testified he had evaluated respondent in 1990 as part of an earlier attempt to commit respondent.  In his 1990 evaluation, Chapman had con­clud­ed that he did not have sufficient information to diagnose respon­dent as a pedophile.  However, respondent's conviction on the 1990 charges and his most recent arrest provided Chapman with enough information to make a diagno­

sis of pedophilia.  On cross-examination, Chapman admitted that his diagnosis of pedophilia was based entirely on respondent's history of committing sex offenses against young boys.

Dr. Anthony James Caterine, another court-appointed psychia­

trist, testified on behalf of the State.  In an interview with Caterine, respondent denied any sexual activity with chil­dren.  Respondent also refused to submit to a penile plethysmogra­phy test, a test which can determine a male's principal sexual preference by measuring changes in the circumference of the penis.

Caterine con­clud­ed that respon­dent is a "sexu­al­ly danger­ous per­son."  In particu­lar, Caterine diagnosed respon­dent as suffer­

ing from pedophilia.  Caterine explained that respondent met the criteria for pedophilia outlined in the latest Diagnostic and Statistical Manual of Mental Disorders (DSM IV).  Caterine set forth the following as the DSM IV criteria for pedophilia:  (1) over a period of at least six months, the subject has had recur­

rent, intense sexual­ly arous­ing fanta­sies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children (generally age 13 years or youn­ger); (2) the fanta­sies, sexual urges, or behaviors cause clinically signifi­cant distress or impairment in social, occupa­tional, or other impor­tant areas of functioning; and (3) the subject is at least 16 years of age and at least five years older than the child who is the subject of the fantasies, urges, or behaviors.  In apply­ing these crite­

ria to respondent, Caterine concluded that the simi­larities among respondent's sex offenses demonstrated a long-term pattern of behavior involving sexual activity with prepubes­cent males.  In addition, respondent's legal problems stemming from his sexual activity with young males, includ­ing a five-year term of impris­

on­ment, satis­fied the second DSM IV criterion.

Dr. Richard L. Grant, a licensed psychiatrist, testified on behalf of respondent.  In his interview with Grant, respondent denied ever engaging in any sexual activity with children.  Grant agreed with Chapman and Caterine that respon­dent has propensities to commit sex offenses against children, but dis­agreed that respon­dent suffers from a mental disorder which would permit him to be classified as a "sexually dangerous person."  

With respect to whether respondent suffers from a mental disorder, Grant dis­agreed with Caterine's appli­ca­tion of the DSM IV crite­ria for pedophilia.  According to Grant, repeat­ed sexual activity with prepubescent children is not sufficient to support a diagno­sis of pedophilia.  Grant opined that a pedophile's principal object of sexual arousal is the prepubes­cent child.  In view of respondent's denial of such arousal and the lack of a penile plethysmography result, Grant concluded that it was impos­

sible to determine that children are the principal object of respondent's sexual desire.  In addi­tion, Grant assert­ed that incar­cer­a­tion result­ing from sexual activity with chil­dren is not the kind of impair­ment contemplated by the second DSM IV criteri­

on for pedophilia.

At the close of evidence, the trial court found respondent to be a "sexu­al­ly dangerous person" under the Act and committed him to the Department of Corrections.

On appeal, respon­dent con­tends that his history of sex offens­es against young boys cannot satisfy the "mental disor­der" compo­nent of the defini­tion of "sexual­ly danger­ous person," while also meeting the second and third prongs of the definition.

Under the Act, a "sexually dangerous person" is a person who:  (1) has suffered from a "mental disorder" for at least one year; (2) has criminal propensities to the commis­sion of sex offenses; and (3) has demonstrated propen­sities toward acts of sexual assault or sexual molestation of children.  725 ILCS 205/1.01 (West 1996).

The evidence adduced at trial clearly shows that the State's experts based their opinions primarily, if not entire­ly, on respondent's long history of legal troubles related to his commission of sex acts with young boys.  The State's experts agreed that this history supports a diagnosis of pedophilia and that respondent has suffered from this disorder for more than one year before the filing of the State's petition in this matter.  It is also clear that this same history of sex offenses against prepu­bes­cent males meets the second and third prongs of the Act's defini­tion of "sexually dangerous person."

However, respon­dent does not explain why it is imper­mis­si­ble for his criminal history to support both a psychi­atric diagnosis (pedo­philia) and a legal conclusion (sexu­ally dangerous person).  Respondent does not identify any right, whether it be constitu­

tional, statutory or otherwise, which has been denied to him.  

Moreover, contrary to respondent's contention, the Act's "mental disor­der" re­quire­ment is not ren­dered superfluous because a pattern of criminal behav­ior is the sole support for the diagno­sis of a mental disor­der.  The "mental disorder" require­

ment may be satisfied by a number of means other than criminal conduct.  A quali­fied psychi­a­trist could diagnose a "mental disor­der" based on an inter­view, stan­dardized testing, a physical test like penile plethysmog­raphy, or some combination of these indica­tors.  In short, because the "mental disorder" element may be established by means other than criminal conduct, the fact that it is estabished by a pattern of criminal conduct in this case does not render the requirement a nullity.  See 
People v. Cochran
, 167 Ill. App. 3d 830, 522 N.E.2d 261 (1988) (statuto­ry language awarding good-time credit to insanity acquittees is not rendered superflu­ous merely because an insanity acquittee may be committed for a term of natural life and good-time credit is not permitted for a life sentence--the credit is still avail­able to insani­ty acquittees who have not been commit­ted for natural life).  Accord­ingly, we hold that the same evi­dence which sup­

ports a psychiat­ric diagno­sis of a mental disorder may also meet the remaining elements of the Act's definition of "sexually dangerous person."

Next, respondent maintains that the State failed to prove beyond a reason­able doubt that he is a "sexu­al­ly danger­ous person."

Under the Act, the State has the burden of proving beyond a reason­able doubt that a respondent is a "sexual­ly dangerous person."  725 ILCS 205/3.01 (West 1996).  A review­ing court will not disturb a trial court's finding that the respon­dent is a "sexual­ly danger­ous person" unless the evi­dence is so improbable as to raise a reason­able doubt.  
People v. Allen
, 107 Ill. 2d 91, 481 N.E.2d 690 (1985).

Two qualified, licensed psychiatrists agreed that respondent suffers from pedophilia.  Court records and evidence adduced at trial demonstrated that respondent has engaged in at least five episodes of sexual conduct with prepubescent boys since 1974.  The trial court heard the testimony of the latest victim and his father.  The trial court was in the best position to observe the demeanor of these witnesses and assess their credibility.  Accordingly, this court will not disturb the trial court's finding that respondent is a "sexually dangerous person." 

For the foregoing reasons, the judgment of the circuit court of Knox County is affirmed.

Affirmed.

HOMER, P.J., and LYTTON, J., concurred.